UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE ) <br> UNITED STATES OF AMERICA FOR ) <br> AN ORDER PURSUANT TO ) <br> 18 U.S.C. § 3512 ) <br> ) <br> Request from Romania for Assistance in a ) <br> Criminal Matter: Ciulin, Bobi Constantin ) <br> ) | MISC. NO. \_\_\_\_ |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this ex parte application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Aaron P. Gershbock, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence from witnesses and to take such other action as is necessary to execute a request for assistance in a criminal matter from Romania. In support of this application, the United States asserts:

RELEVANT FACTS

1. On August 3, 2016, the Romanian Ministry of Justice submitted a request for assistance (the Request) to the United States, pursuant to the Treaty Between the Government of the United States of America and the Government of Romania on Mutual Legal Assistance in Criminal Matters, Rom.-U.S., May 26, 1999, S. TREATY DOC. NO. 106-20, as amended by the Protocol to the Treaty between the United States of America and Romania on Mutual Legal

Assistance in Criminal Matters signed in Washington on 26 May 1999, Rom.-U.S., September 10, 2007, S. TREATY DOC. NO. 110-11 (the Treaty). As stated in the Request, the Prosecutor's Office attached to the High Court of Cassation and Justice, Directorate for Investigating Organized Crime and Terrorism, is investigating three criminal offenses, specifically, illegal accessing of a computer system, conducting fraudulent financial operations, and putting into circulation forged values, which occurred between on or about December 26, 2015, and February 1, 2016, in violation of the criminal law of Romania, namely, Articles 360, 250, and 313 (respectively) of the Romanian Criminal Code. A copy of the applicable law is included as Attachment A to this application. Under the Treaty, the United States is obligated to render assistance in response to the Request.

2. According to authorities in Romania, on February 1, 2016, Romanian authorities caught Ciulin Bobi Constanti (Constanti) in the act of using counterfeit bank cards to withdraw money from an ATM in Romania. As part of the investigation, Romanian officials searched Constanti's home in Romania and found both hardware and software designed for use in forging electronic payment instruments, 50 counterfeited bank cards, and approximately $15,000 in cash that appeared to come from fraudulent ATM withdrawals.

3. Upon further investigating the counterfeited bank cards, Romanian authorities learned that many of the banks that ostensibly issued the bank cards counterfeited by Constanti were located in the United States. Romanian authorities traced each counterfeit bank card to an ATM transaction in Romania, and discovered that 35 bank cards were used at ATMs from 26 different U.S. banks. All the transactions took place on December 12, 2015. The 28 relevant bank card numbers from each of the 24 banks in the United States that have not yet voluntarily produced records without a subpoena are listed below:

| # | Bank Name | Account Number |
|---|---|---|
| 1 | Bank One N.A. USA | XXXXXXXXXXXX9379 |
| 2 | BOFT NA USA (Bank of OK) | XXXXXXXXXXXX8405 |
| 3 | Boneville Bank USA | XXXXXXXXXXXX6064 |
| 4 | Capital Federal Savings Bank USA | XXXXXXXXXXXX5200 |
| 5 | Dollar Bank | XXXXXXXXXXXX4774 |
| 6 | Dollar Bank | XXXXXXXXXXXX1276 |
| 7 | EDS Employees Federal USA (San Antonio Credit Union) | XXXXXXXXXXXX3204 |
| 8 | Eglin Federal Credit Union | XXXXXXXXXXXX3145 |
| 9 | Famers State Bank Of Calhan | XXXXXXXXXXXX7882 |
| 10 | First National Bank Of Pennsylvania | XXXXXXXXXXXX5330 |
| 11 | Franklin Mint F.C.U. | XXXXXXXXXXXX8989 |
| 12 | Jeanne D'Arc C-U USA | XXXXXXXXXXXX9463 |
| 13 | Kentucky Telco Federal Credit Union | XXXXXXXXXXXX9546 |
| 14 | Kentucky Telco Federal Credit Union | XXXXXXXXXXXX9546 |
| 15 | Legacy Bank Of Texas USA | XXXXXXXXXXXX6988 |
| 16 | PNC Bank N.A. | XXXXXXXXXXXX1042 |
| 17 | PSCU Financial Services Inc. (Sun East Federal Credit Union) | XXXXXXXXXXXX5216 |
| 18 | Pulse EFT Association USA (Woodforest National) | XXXXXXXXXXXX5365 |
| 19 | Pulse EFT Association USA (Woodforest National) | XXXXXXXXXXXX1281 |
| 20 | Regions Bank USA | XXXXXXXXXXXX0335 |
| 21 | EIF Federal Credit Union (SAFE F.C.U.) | XXXXXXXXXXXX4276 |
| 22 | South Carolina Federal Credit Union | XXXXXXXXXXXX1457 |
| 23 | Southland Bank USA (Ameris Bank) | XXXXXXXXXXXX4213 |
| 24 | Suncoast Schools Federal | XXXXXXXXXXXX3972 |
| 25 | U.S. Bank National Association USA | XXXXXXXXXXXX2686 |
| 26 | Zions First National Bank | XXXXXXXXXXXX0098 |
| 27 | Zip Network USA | XXXXXXXXXXXX3062 |
| 28 | Zip Network USA | XXXXXXXXXXXX4896 |

4.     To further the investigation, authorities in Romania have asked U.S. authorities to (1) provide bank records from the banks pertaining to the listed account numbers; (2) provide bank records from the listed banks pertaining to complaints of fraudulent transactions from the account holders for the relevant period, including the loss amount with respect to each complaint and whether the bank has compensated the true account holders as a result of the fraudulent transactions; and (3) ask each bank to clarify whether the bank wishes to make a claim as part of and party to Romania's combined criminal and civil case.

## LEGAL BACKGROUND

### The Treaty

5.     A treaty constitutes the law of the land. U.S. Const. art. VI, cl.2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (368) (1989) (internal quotation marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

6.     The United States and Romania entered into the Treaty to promote more effective cooperation and assistance between the parties in criminal matters. See Treaty, pmbl. The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures. Treaty, Article 1. In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use

compulsory measures to further the execution of such requests. Treaty, Article 5(1) ("The competent judicial authorities . . . of the Requested State shall have power to issue subpoenas, search warrants or other orders necessary to execute the request.").

### 18 U.S.C. § 3512

7. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*         \*         \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*         \*         \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

8. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat.

2086.[1]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders which are necessary to execute a foreign request.

9. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs, which serves as the "Central Authority" for the United States, has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[2]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[3] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)-(b)(1).  In addition, a federal judge may prescribe any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  See In re Letter of Request from the Crown Prosecution Service of the

---

[1] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were previously executed); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[2] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B.

[3] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1) and Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

United Kingdom, 870 F.2d 686, 693 (D.C. Cir. 1989) (court has discretion in prescribing procedures to be followed in executing foreign request under 28 U.S.C. § 1782); cf. White v. National Football League, 41 F.3d 402, 409 (8th Cir. 1994) (court may issue process necessary to facilitate disposition of matter before it); Fed. R. Crim. P. 57(b).

10. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents or other things to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; (3) take testimony or statements; and (4) take receipt of documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner Subpoena." Any such subpoena or any other order, subject to subsection (d), may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f). A copy of a "Commissioner Subpoena" is included as Attachment B.

## REQUEST FOR ORDER

11. The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence from witnesses and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," i.e., the Romanian Ministry of Justice, the designated Central Authority in Romania for requests made pursuant to the Treaty, and seeks assistance in the investigation of illegal accessing of a computer system, conducting fraudulent financial operations, and putting into circulation forged values, criminal offenses in Romania. Furthermore, the requested Order is

necessary to execute the Request, and the assistance requested, i.e., the production of bank records, falls squarely within that contemplated by both the Treaty and Section 3512. Finally, this application was properly filed in the District of Columbia.

12. Both Section 3512 and the Treaty authorize the use of compulsory process in the execution of treaty requests comparable or similar to that used in domestic criminal investigations or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a treaty request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person other than the recipients of the commissioner subpoenas.[4]

13. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Aaron P. Gershbock, Trial Attorney, Office of International Affairs (or a substitute or successor

---

[4] Romanian authorities have not asked U.S. authorities to keep the Request confidential. Accordingly, the United States is not seeking authorization to issue a non-disclosure order, nor is it seeking an order to seal the court file.

subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner subpoenas, to obtain the evidence requested in a form consistent with the intended use thereof.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

TRACEY S. LANKLER
ASSOCIATE DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
DC Bar Number 449276
(202) 305-9645 telephone

By: *(signature)*
Aaron P. Gershbock
Trial Attorney
CA Bar Number 266351
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C. 20530
(202) 616-5275 telephone
(202) 514-0080 facsimile
Aaron.Gershbock@usdoj.gov

Relevant Provisions of the Romanian Criminal Code

**Article 360, Illegal accessing of a computer system:**

(1) Access without right to a computer system shall be punished by imprisonment from 3 months to 3 years or a fine.

(2) The deed described in par. (1) committed in order to obtain computer data, is punishable by imprisonment from 6 months to 5 years.

(3) If the deed described in par. (1) was committed on a computer system that, through procedures, devices or specialized programs, access is restricted or prohibited for certain categories of users, the punishment is imprisonment 2 to 7 years.

**Article 250, Conducting fraudulent financial operations:**

(1) Conducting an operation to withdraw cash, load or unload an electronic payment instrument or funds transfer by using, without the consent of the holder, an electronic payment instrument or identification data that allow its use is punishable by imprisonment from 2 to 7 years.

**Article 313, Putting into circulation forged values:**

(1) Putting into circulation the forged values stipulated in articles 310-312 as well as their receipt, possession or transmission, in order to put them into circulation is sanctioned with the punishment provided by law for the offense of forgery by which they were produced, respectively by imprisonment of 2-7 years and prohibition of certain rights.